IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BLAINE DYER and JAMES ("JIMMY") )<br>DYER, )<br>)<br>Defendants. ) | Case No. CR-22-00209-JD |

## ORDER

Before the Court is Defendant James Dyer's Motion to Dismiss Indictment for Rule 6(e) Violations of Grand Jury Secrecy ("Motion") [Doc. No. 64]. Defendant Blaine Dyer joins in, adopts, and incorporates on his behalf the Motion [Doc. No. 99].[1] The government responded in opposition ("Response") [Doc. No. 77].

Under Federal Rules of Criminal Procedure 12(b) and 6(e) and the Fifth Amendment to the United States Constitution, Defendants assert that the Indictment [Doc. No. 1][2] returned on May 17, 2022, should be dismissed based on their belief that the grand jury heard evidence and deliberated in a courtroom equipped with cameras. This speculation is based on COVID protocols in general orders from this district issued

---

[1] The United States does not object to Blaine Dyer joining this Motion but contends it should be denied. *See* [Doc. No. 119 at 5; Doc. No. 77].

[2] A Superseding Indictment [Doc. No. 84] was returned on December 19, 2022, but it does not impact the Motion [Doc. No. 89].

in 2020 and 2021.[3] According to Defendants, the mere presence of cameras in a grand jury proceeding would compromise the validity of the proceedings.

The government responds, explaining that the grand jury did not meet in a courtroom equipped with cameras during any portion of its investigation of Defendants' conduct. The government also argues that even if the grand jury had met in a camera-equipped room, the proceedings would not have been influenced such that the Indictment should be dismissed.

I.     ANALYSIS

   A.     **Defendants only speculate that the grand jury convened in camera-equipped courtrooms.**

According to the government, "the grand jurors who considered the investigation . . . never met in a camera-outfitted courtroom." Response at 2. The government contends that Defendants' concerns about grand jury secrecy "are therefore misplaced." *Id.*

This representation by the government is made by attorneys as officers of the Court and consistent with their professional and ethical obligations. *See* LCvR83.6(b) (explaining that the Oklahoma Rules of Professional Conduct govern attorney conduct in this Court); LCrR57.2 (explaining LCvR83.6 is applicable to the local criminal rules); *see also* Okla. Rule of Professional Conduct 3.3 (discussing the lawyers' obligations of candor toward the court). The government's representation satisfies the Court and

---

[3] The Motion vaguely references general orders issued on March 13, 2020 (G.O. 20-5), May 28, 2020 (G.O. 20-5.1), December 9, 2020 (G.O. 20-28), and December 30, 2021 (G.O. 21-11, superseding G.O. 20-28) relating to COVID-19 and quarantine protocols but fails to indicate how any of these general orders in 2020 and 2021 would have impacted grand jury proceedings in this case.

appears to dispel any concern about a violation of grand jury secrecy by courtroom cameras. The Court therefore denies the Motion.

> **B. Alternatively, even if grand jury proceedings in this case had occurred in a courtroom equipped with cameras, Defendants offer no showing entitling them to relief.**

Federal Rule of Criminal Procedure 6(e) provides a general rule of secrecy that, unless otherwise authorized under the Rules, certain persons "must not disclose a matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B). *See also United States v. John Doe, Inc. I*, 481 U.S. 102, 107–08 (1987). "The Court's power[] to dismiss an indictment for violation of Rule 6(e) is limited." *United States v. Bowling*, Case No. CR-07-196-C, [Doc. No. 25] at 2 (W.D. Okla. Oct. 15, 2007).

The Court may dismiss an indictment only where there is evidence the misconduct prejudiced a defendant. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) ("We hold that, as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants."). The question of whether a defendant has been prejudiced is governed by Federal Rule of Criminal Procedure 52(a). *Id.* at 255–56. Rule 52(a) states: "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."

"The Supreme Court has articulated different harmless-error standards, depending upon whether the error is of constitutional dimension." *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990) (en banc). In *Bank of Nova Scotia*, the Supreme Court explained that a presumption of prejudice arises in cases of constitutional error because those cases present circumstances where "the structural protections of the grand jury have

been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." 487 U.S. at 257

While Defendants allege their Fifth Amendment rights to a fair and impartial grand jury would be violated by the alleged presence of cameras, they raise no argument that any cameras somehow biased the grand jury against them or that "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair." *See id.* Instead, they argue that the secrecy provisions of Rule 6(e) would be violated by the presence of the alleged cameras. This is a claim based on a claimed nonconstitutional error, defect, irregularity, or variance in grand jury proceedings. There is thus no presumption of prejudice here.

Under Rule 52(a), Defendants must show that the alleged presence of the cameras affected their substantial rights. If not, the claimed irregularity will be disregarded as harmless. When sought based on allegations of a nonconstitutional error in grand jury proceedings, "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*, 487 U.S. at 256 (citation omitted); *see also Rivera*, 900 F.2d at 1469 ("A non-constitutional error is harmless unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect.").

To show that presence of cameras in the courtroom would have affected their substantial rights, and thus prejudiced them, Defendants argue that the alleged cameras

4

may have modified the behavior of the grand jurors. They cite to *Grubbs v. O'Neill*, 744 F. App'x 20 (2d Cir. 2018) (unpublished) and to a study of the effects of camera-surveillance on behavior.[4]

*Grubbs* is an unpublished, extracircuit decision that does not support a finding that presence of cameras in the grand jury proceedings would have substantially influenced the grand jury's decision to indict in this case. In *Grubbs*, the Second Circuit reasoned that use of limited video surveillance in booths where pretrial detainees consulted with their attorneys *might* cause some chilling effect on the detainees' candid conversation with their attorneys. 744 F. App'x at 23. *Grubbs* made no ruling on whether the presence of the cameras inhibited candid conversation. *See id.*; *cf. United States v. Mayes*, --- F. Supp. 3d ---, No. CR-20-240-F, 2022 WL 2070636, at *3 n.5 (W.D. Okla. June 8, 2022) (noting that *Grubbs* "did not make a *per se* ruling that the presence of cameras could exert a chilling effect on or inhibit candid communications" but regardless, concluding that "even if the mere presence of cameras presented a risk of chilling jurors' deliberations, . . . it was not a risk sufficient to support a presumption of prejudice"). Further, merely pointing to a psychological study does not support a finding that the presence of cameras would prejudice Defendants. *See Mayes*, 2022 WL 2070636, at *3

---

[4] *See, e.g.*, Motion at 9 n.7 (citing Jansen, Anja M., Giebels, Ellen, van Rompay, Thomas J. L., Junger, Marianne, *The Influence of the Presentation of Camera Surveillance on Cheating and Pro-Social Behavior*, Front. Psychol., Oct. 2018).

n.4 (noting that the study and references cited in the study "are insufficient to give rise to a specific showing of prejudice").[5]

While there is no indication that the grand juries that returned the two indictments in this case ever convened in a camera-equipped courtroom, *see* Response, the Court finds Defendants have not made a plausible showing that, even if the grand jurors did, this irregularity would have "substantially influenced the grand jury's decision to indict" them; nor have they asserted any argument or allegation that would give rise to "'grave doubt' that the decision to indict was free from the substantial influence of" the irregularity. *See Bank of Nova Scotia*, 487 U.S. at 256.[6] The Court, therefore, finds that Defendants have not shown that the Indictment [Doc. No. 1] or Superseding Indictment [Doc. No. 84] should be dismissed.[7]

---

[5] Portions of the Motion are a copy-and-paste of the motion filed in *Mayes*, including the request for an evidentiary hearing.

[6] Although in the context of jury trial deliberations and not grand jury proceedings, the undersigned judge finds persuasive orders of this district rejecting similar challenges to deliberations in courtrooms equipped with cameras during the height of the COVID-19 protocols in this district. *See, e.g.*, *Mayes*, 2022 WL 2070636, at *3 (addressing request relating to jury deliberations in November 2021 jury trial); *United States v. Nichols*, No. 21-CR-222-SLP, [Doc. No. 56] (W.D. Okla. Feb. 2, 2022) (addressing request relating to jury deliberations in December 2021 jury trial); *United States v. Sanchez*, 21-CR-183-J-1, [Doc. No. 81] (W.D. Okla. Mar. 10, 2022) (addressing request relating to jury deliberations in November 2021 jury trial).

[7] Defendants fail to contest the government's assertion that the grand jury in this matter did not meet in camera-equipped courtrooms, though they had an opportunity to (but did not) reply. *See* [Doc. No. 130 (granting Doc. Nos. 81, 117, and 121)]. Given Defendants' failure to make any showing in this matter, an evidentiary hearing is not required or necessary, and the alternative request for an evidentiary hearing is denied. *Cf. United States v. Nichols*, No. 21-CR-222-SLP, [Doc. No. 56] (W.D. Okla. Feb. 2, 2022) (finding no evidentiary hearing warranted in part because of the speculative nature of the

## II.  CONCLUSION

Based on the parties' submissions, and under the relevant law, the Court **DENIES** Defendant James Dyer's Motion to Dismiss Indictment for Rule 6(e) Violations of Grand Jury Secrecy [Doc. No. 64], which Defendant Blaine Dyer joins in, adopts, and incorporates on his behalf [Doc. No. 99].[8]

IT IS SO ORDERED this 7th day of February 2023.

*[signature]*
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

challenge and lack of evidence); *United States v. Sanchez*, 21-CR-183-J, [Doc. No. 81] (W.D. Okla. Mar. 10, 2022) (denying defendant's request for evidentiary hearing where defendant "cannot articulate any 'sufficient risk of chill' to justify any presumption of prejudice") (citation omitted).

[8] Blaine Dyer's Notice of Motion and Motion for Joinder in Motions of Co-Defendant James Dyer [Doc. No. 99] is granted only to the limited extent that Blaine Dyer is allowed to join in James Dyer's Motion to Dismiss [Doc. No. 64], but it is otherwise denied on the merits as to that issue. The Court will rule on the other joinder aspects as they arise with each individual motion.