IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-22-00209-JD |
| ) | |
| BLAINE DYER and JAMES ("JIMMY") ) | |
| DYER, ) | |
| ) | |
| Defendants. ) | |

### ORDER

Before the Court are Defendants' Motions for Bill of Particulars [Doc. Nos. 58 and 97], Defendant James Dyer's Motion to Dismiss Counts Two through Eight of the Indictment for Defectiveness Due to Multiplicity [Doc. No. 66], and Defendant James Dyer's Motion to Dismiss the Counts Two through Eight and the Forfeiture Count of the Indictment for Vagueness [Doc. No. 74]. These motions challenge various aspects of the Indictment [Doc. No. 1] and the Superseding Indictment [Doc. No. 84]. The government responded in opposition. [Doc. Nos. 62, 75, 82, and 111]. Defendant Blaine Dyer joins in, adopts, and incorporates on his behalf the Motions to Dismiss [Doc. No. 99].[1] Upon review of the parties' submissions and the relevant law, the Court denies the motions challenging Counts 2 through 8 of the indictment as vague, seeking a bill of particulars,

---

[1] The United States notes that Blaine Dyer filed his own motion for bill of particulars, but otherwise does not object to Blaine Dyer joining these motions. [Doc. No. 119] at 3 n.2, 5.

and challenging the forfeiture allegations as vague, and denies in part and reserves in part the motion seeking dismissal for multiplicity.

## BACKGROUND

The Superseding Indictment[2] includes against Blaine and James Dyer one count for Conspiracy to Commit Honest Services Wire Fraud, in violation of 18 U.S.C. § 1349, and seven counts of Honest Services Wire Fraud, in violation of 18 U.S.C. §§ 1346 and 1343. It is a twenty-three-page "speaking" indictment that alleges in significant detail a scheme by Defendants to defraud Continental Resources, Inc. ("Continental") of land and mineral lease acquisitions and enrich themselves and others by using Continental's confidential business information including future drilling and leasing plans. It mentions James Dyer by name over forty times and Blaine Dyer by name over eighty times, alleging various acts relevant to the charged conspiracy and substantive offenses.

Relevant to the Honest Services Wire Fraud counts against Defendants are two business entities: Continental and Enercore Resources LLC ("Enercore")—an entity allegedly formed by Defendants and others. Counts Two through Eight of the Superseding Indictment [Doc. No. 84] arise out of seven payments from Continental to Enercore pursuant to an overriding royalty interest ("ORRI") reserved by Enercore in two assignment transactions.

---

[2] The Superseding Indictment added a new count against Blaine Dyer but did not substantively alter the other charges set forth in the Indictment [Doc. No. 1] or the pretrial motions. *See* Notice [Doc. No. 89].

The seven counts of Honest Services Wire Fraud are charged under §§ 1343 and 1346. The wire fraud statute, § 1343, states in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

The Honest Services statute, § 1346, states: "For the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." Finally, the conspiracy statute Defendants are charged under in Count One, § 1349, states: "Any person who attempts or conspires to commit any offense under [Chapter 63 of Title 18 of the United States Code] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

## DISCUSSION

### I.   Vagueness

Defendants claim the Honest Services Wire Fraud counts are unconstitutionally vague and must be dismissed because the Indictment and Superseding Indictment fail to charge an essential element of an offense under §§ 1343 and 1346. Specifically, they argue that the indictments "fail[] to allege what 'materiality' of any alleged actions by

3

[Defendants] to 'knowingly cause[] signals to be transmitted by means of wire communications in interstate commerce.'" [Doc. No. 74] at 1.[3]

An indictment is held only to minimal constitutional standards, and the sufficiency of an indictment is judged "by practical rather than technical considerations." *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997). "An indictment is sufficient 'if it contains the elements of the offense charged, putting the defendant on fair notice of the charge against which he must defend and if it enables a defendant to assert an acquittal or conviction in order to prevent being placed in jeopardy twice for the same offense.'" *United States v. Poole*, 929 F.2d 1476, 1479 (10th Cir. 1991) (quoting *United States v. Staggs*, 881 F.2d 1527, 1530 (10th Cir. 1989)). "The test of the validity of the indictment is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *United States v. Gama–Bastidas*, 222 F.3d 779, 785 (10th Cir. 2000) (citation omitted).

Defendants argue that the allegations supporting the Honest Services Wire Fraud counts, when the "contingencies are stripped away," state merely the language of §§ 1343 and 1346 such that the counts are insufficiently alleged under *United States v. Curtis*, 506 F.2d 985 (10th Cir. 1974).[4] [Doc. No. 74] at 4. The Court disagrees.

---

[3] The Court references CM/ECF page numbering across the top of filings.

[4] In *Curtis*, the Tenth Circuit explained that, for offenses under the mail fraud statute, 18 U.S.C. § 1341, it is insufficient "to merely plead the statutory language." *Id.* at 990. Rather, an indictment must give "some substantial indication of the nature or character of any scheme or artifice to defraud, or to obtain money or property by means of false pretenses, representations or promises." *Id.*

The government alleges in the Superseding Indictment:

- From around December 2013 through around June 2020, Defendants knowingly participated in a scheme to enrich themselves "and others through the unlawful use and exploitation of Continental's confidential drilling and leasing plans that [Justin] Biggs provided by virtue of his employment with Continental." [Doc. No. 84] at 3.

- Biggs provided Defendants with information on Continental's mineral leasing plans, Defendant Blaine Dyer and Mitchell Coatney conducted title research to determine who owned the minerals Continental sought to acquire, and Defendant James Dyer negotiated directly with the mineral owners to acquire leases before Continental could. *Id.* at 4.

- Defendants and others formed business entities, including Enercore, to negotiate with and assign their newly acquired mineral interests to Continental. They formed Enercore and convinced another individual to serve as the face of the company to conceal their involvement. *Id.* at 4–5.

- On March 20, 2014 and on July 24, 2014, Biggs, on behalf of Continental, offered to purchase Enercore's mineral interests obtained by Defendants using the information Biggs provided Defendants. Continental eventually agreed to purchase some of the acreage. On April 22, 2014, Continental wired $3,462,533.32 to Enercore, and on August 29, 2014, Continental wired $1,621,684.00 to Enercore. *Id.* at 14–15.

- Defendant Blaine Dyer agreed to pay Biggs a kickback of 30% of any of the profits Biggs' information yielded. Biggs deposited portions of the cash he received in kickback payments on February 4, 2016, March 30, 2016, January 26, 2017, and March 15, 2017. *Id.* at 5, 13.

- As part of the transactions between Enercore and Continental, Enercore reserved some interest—overriding royalty interests, specifically—in the minerals it assigned to Continental, which required Continental to make periodic payments to Enercore through June 2020. Continental made payments of varying amounts to Enercore on November 13, 2018, December 11, 2018, March 13, 2019, April 3, 2019, June 7, 2019, February 6, 2020, and March 31, 2020. *Id.* at 15–17.

- Continental made these ORRI payments from a bank account maintained by U.S. Bank National Association, which "was a federally insured financial institution founded in Cincinnati, Ohio, and headquartered in Minnesota." Enercore received the ORRI payments in a bank account maintained by Bank7, which "was an Oklahoma-based

community bank with locations throughout Oklahoma, Kansas, and Texas." *Id.* at 15–16.

The Superseding Indictment sets forth with sufficient particularity, among several things, Defendants' material misrepresentations, false statements, false pretenses, or concealment of facts, the dates Defendants completed relevant transactions, the name of the alleged victim organization, and the names and locations of financial institutions where transaction funds were exchanged. The Superseding Indictment does not merely boil down to a simple recitation of the statutes as Defendants suggest. Counts Two through Eight conform to minimal constitutional standards and are not unduly vague.

## II.     **Bill of Particulars**

Defendants contend they are entitled to a bill of particulars under Federal Rule of Criminal Procedure 7(f). They explain a bill of particulars is necessary here to provide "greater specificity" regarding the allegations set forth in the indictments, which would "adequately apprise [them] of the scope of the Government's allegations and allow [them] to prepare [their] defense and avoid unfair and prejudicial surprise at trial." [Doc. No. 58] at 1. They claim that the Indictment [Doc. No. 1] and Superseding Indictment [Doc. No. 84] lack sufficient details to apprise them of the charges against them.

A district court may, in the exercise of discretion, direct the government to file a bill of particulars. *See* Fed. R. Crim. P. 7(f); *see also United States v. Levine*, 983 F.2d 165, 166 (10th Cir. 1992). "'The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense . . . .'" *Levine*, 983 F.2d at 166–67 (quoting *United States v. Dunn*, 841 F.2d 1026, 1029

(10th Cir. 1988)). "A bill of particulars is not necessary if 'the indictment sets forth the elements of the offense charged and sufficiently apprised the defendant of the charges to enable him to prepare for trial.'" *Id.* at 167 (quoting *Dunn*, 841 F.2d at 1030).

Defendants' motions for a bill of particulars are "improper request[s] for evidentiary detail," or requests to "disclose in detail the evidence upon which the Government will rely at the trial." *United States v. Barbieri*, 614 F.2d 715, 719 (10th Cir. 1980) (citation omitted). The Tenth Circuit has repeatedly explained that a bill of particulars is not proper for that purpose. *Dunn*, 841 F.2d at 1029 (affirming district court's denial of motion for bill of particulars where defendant requested that the government state with specificity "the date, time, place, witnesses, and circumstances concerning the alleged conspiracy"); *see also Barbieri*, 614 F.2d at 719 (affirming denial of motion for bill of particulars requesting "[t]he specific events, facts, conduct, or circumstances upon which the allegations in the indictment are based" and deeming motion "an improper request for evidentiary detail"). As the Tenth Circuit has held, "the defendant is not entitled to know all the *evidence* the government intends to produce, but only the *theory* of the government's case." *Dunn*, 841 F.2d at 1030 (citation omitted).

The Superseding Indictment sets forth the elements of each count, and the Court finds it is more than sufficiently complete and precise to enable Defendants to prepare their defenses, to avoid prejudicial surprise at trial, and to bar the risk of double jeopardy.

The Court is satisfied that the information contained in the Superseding Indictment meets the minimal due process standards such that a bill of particulars is unwarranted.[5]

## III. Forfeiture Allegations

Defendants next contend that the forfeiture allegations in the Superseding Indictment are facially deficient. The Superseding Indictment includes a notice of the government's intent to seek forfeiture from Defendants pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2), and 28 U.S.C. § 2461. Defendants argue that the allegations are vague and provide them no notice of what the government will seek in forfeiture.[6]

The motion to dismiss the forfeiture allegations is premature. Federal Rule of Criminal Procedure 32.2(a) states:

> A court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute. The notice should not be designated as a count of the indictment or information. The indictment or information need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks.

---

[5] Additionally, as Defendants point out, the government has produced approximately 800,000 pages of discovery to Defendants. *Cf. United States v. Kunzman*, 54 F.3d 1522, 1526 (10th Cir. 1995) (holding that an indictment that "described the defendants' scheme in detail and provided dates, places and the persons involved in various transactions," combined with "full discovery of the government's materials prior to trial," was sufficient to apprise the defendant of the charges against him and enable him to prepare his defense). The Court also notes that in this case, the government provided notice of coconspirator statements, and the Court held a lengthy *James* hearing. *See* [Doc. Nos. 140, 158].

[6] Defendants cite to a former version of Federal Rule of Criminal Procedure 7(c), which has been consolidated into Rule 32.2. *See* Fed. R. Crim. P. 32.2 advisory committee's note to 2000 amendment.

The forfeiture allegations are not a count of the Superseding Indictment, and all Rule 32.2(a) requires of the government is *notice* to Defendants that it will seek forfeiture of property as part of the punishment should Defendants be convicted. An indictment need not include an approximate amount, a method of computation, or a specification of assets associated with the forfeiture request to put a defendant on notice of the government's intent to include forfeiture in a potential sentence. *United States v. Arnold*, 878 F.3d 940, 944–45 (10th Cir. 2017).

The government has provided Defendants notice that it will seek forfeiture. Nothing more is required at this stage. *United States v. Flores*, No. CR-17-122-SLP, 2018 WL 11240617, at *2 (W.D. Okla. Jan. 8, 2018).

### IV.  Multiplicity

Finally, Defendants have moved to dismiss the seven counts of Honest Services Wire Fraud in violation of 18 U.S.C. §§ 1343 and 1346, arguing that they are "defective due to multiplicity, violative of Double Jeopardy, and unfairly prejudicial." [Doc. No. 66] at 1. They contend these counts, while they charge separate offenses, are based on the same alleged acts of Defendants—which are receipt of ORRI payments arising from the same alleged transaction.

Multiplicity is the charging of a single offense in separate counts. *United States v. Jenkins*, 313 F.3d 549, 557 (10th Cir. 2002); *United States v. McCullough*, 457 F.3d 1150, 1162 (10th Cir. 2006). The danger is that the defendant will receive multiple punishments for a single offense. *McCullough*, 457 F.3d at 1162. Although multiplicity "is not fatal to an indictment, it poses the threat of multiple sentences for the same

offense and may improperly suggest to the jury that the defendant has committed more than one crime." *United States v. Morehead*, 959 F.2d 1489, 1505 (10th Cir. 1992) (internal citation omitted). "The defendant bears the burden of proving a claim of double jeopardy." *United States v. Denezpi*, 979 F.3d 777, 781 (10th Cir. 2020) (citation omitted).

The government may present multiplicitous charges to the jury, but "multiplicitous sentences violate the Double Jeopardy Clause." *United States v. Frierson*, 698 F.3d 1267, 1269 (10th Cir. 2012) (citations omitted). Thus, where there are multiplicitous count convictions, the dismissal or merger of counts after trial but before sentencing is an adequate remedy. *See id.*

In cases, as here, "where each successive act has been charged as a separate crime under the same statute," the proper "inquiry becomes defining the correct unit of prosecution."[7] *United States v. Esch*, 832 F.2d 531, 541 (10th Cir. 1987) (citing *Bell v. United States*, 349 U.S. 81, 82–83 (1955)). "[T]he question is whether the facts underlying each count were intended by Congress to constitute separate 'units'

---

[7] The government asserts that Defendants claim that the multiplicity issue is between Counts Two through Eight (the honest services wire fraud charges) and Count One (the conspiracy charge). [Doc. No. 75] at 1. Defendants never explicitly make this argument. The Court, nonetheless, understands the confusion, especially given Defendants' reliance on *Blockburger v. United States*, 284 U.S. 299 (1932). Any contention that the honest services wire fraud counts are multiplicitous to the conspiracy count would fail, as they each require proof of another fact the other does not. *See McCullough*, 457 F.3d at 1162 (explaining that the Tenth Circuit has "repeatedly held that the 'commission of a substantive offense and a conspiracy to commit it are separate crimes because the essence of a conspiracy charge is an agreement to commit a substantive offense.'" (quoting *United States v. Johnson*, 977 F.2d 1360, 1371 (10th Cir. 1992))).

of prosecution." *United States v. Elliott*, 937 F.3d 1310, 1313 (10th Cir. 2019) (quoting *United States v. Polouizzi*, 564 F.3d 142, 154 (2d Cir. 2009)).

"The relevant unit of prosecution means the 'minimum amount of activity for which criminal liability attaches' for any charge under an applicable criminal statute." *United States v. Maldonado-Passage*, 56 F.4th 830, 839 (10th Cir. 2022) (quoting *United States v. Rentz*, 777 F.3d 1105, 1108 (10th Cir. 2015)). Courts typically determine the unit of prosecution through statutory interpretation. *Id.* In cases of "grievous ambiguity," the Supreme Court and Tenth Circuit have "urged" courts not to "turn[] a single transaction into several offenses." *Id.* (citing *Elliot*, 937 F.3d at 1313 and *Muscarello v. United States*, 524 U.S. 125, 139 (1998)).

The Court is without any reasoned argument from the parties regarding the relevant unit of prosecution based on a proper interpretation of §§ 1343 and 1346, as the parties do not discuss the unit of prosecution issue in their briefing. While Defendants generally quote case law that explains that inclusion of multiplicitous charges "may improperly suggest to the jury that [a] defendant has committed more than one crime," [Doc. No. 66 at 4 (quoting *Morehead*, 959 F.2d at 1505)], they do not adequately explain how the charges under §§ 1343 and 1346 are multiplicitous or specify how they are prejudiced by submission of all counts to the jury. They, therefore, have not met their burden of showing pretrial dismissal of any count due to multiplicity is warranted. And, as explained above, multiplicity is not fatal to an indictment. Merger or dismissal of multiplicitous counts after trial are adequate remedies. *See Frierson*, 698 F.3d at 1269.

The Court thus finds that the most prudent course of action is to deny the Motion to Dismiss based on multiplicity to the extent it seeks pretrial dismissal of Counts Two through Eight and to reserve reaching a final determination on the multiplicity issue until after trial in the event the jury finds either Defendant guilty of more than one count of Honest Services Wire Fraud. If so, the Court will expect the parties to present the multiplicity issue for further consideration post-trial and before sentencing.

## **CONCLUSION**

For these reasons, the Court DENIES Defendants' Motion for Bill of Particulars [Doc. Nos. 58 and 97] and Defendant James Dyer's Motion to Dismiss the Counts Two through Eight and the Forfeiture Count of the Indictment for Vagueness [Doc. No. 74], which Defendant Blaine Dyer joins in, adopts, and incorporates on his behalf [Doc. No. 99]. Further, the Court DENIES in part and RESERVES in part Defendant James Dyer's Motion to Dismiss Counts Two through Eight of the Indictment for Defectiveness Due to Multiplicity [Doc. No. 66], which Defendant Blaine Dyer also joins in, adopts, and incorporates on his behalf [Doc. No. 99].[8]

---

[8] Blaine Dyer's Notice of Motion and Motion for Joinder in Motions of Co-Defendant James Dyer [Doc. No. 99] is granted to the limited extent that Blaine Dyer is allowed to join in James Dyer's Motions to Dismiss [Doc. Nos. 66 and 74]. Blaine Dyer filed his own motion for bill of particulars [Doc. No. 97] so his request to join James Dyer's separate motion is denied as moot and because James Dyer's motion for bill of particulars is specific to James Dyer and inapplicable to Blaine Dyer. The merits of these motions are addressed throughout this Order. The Court will rule on the other joinder aspects as they arise with each individual motion or by separate order.

IT IS SO ORDERED this 9th day of February 2023.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE