IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CR-22-00209-JD |
| BLAINE DYER and JAMES ("JIMMY") DYER, | ) ) ) ) |
| Defendants. | ) ) |

## ORDER

Before the Court are Defendant James Dyer's Motion to Dismiss Indictment for Expiration of the Statute of Limitations After Withdrawal from the Conspiracy [Doc. No. 73] and Defendant Blaine Dyer's Motion to Dismiss for Expiration of the Statute of Limitations and Due Process [Doc. No. 95].[1] Also before the Court is James Dyer's Motion to Dismiss Indictment for Due Process and Speedy Trial Violation for Pre-

---

[1] Defendant James Dyer filed a Motion for Joinder [Doc. No. 104] seeking to join in and supplement Blaine Dyer's Motion to Dismiss [Doc. No. 95]. The government moved to strike the joinder motion as untimely [Doc. No. 112], to which James Dyer responded [Doc. No. 113], arguing that his motion was not untimely and should not be stricken. Although the joinder motion was filed after James Dyer's pretrial motion deadline, it relates to a timely filed motion by Blaine Dyer and the government has responded to the substance [Doc. No. 116 at 8–11]. So the Court declines to strike it. Therefore, the Court grants the request for joinder [Doc. No. 104] in that it will consider the arguments raised in the instant motions to dismiss as they relate to both Defendants and denies the motion to strike [Doc. No. 112].

Accusation Delay [Doc. No. 71].[2] The government responded in opposition to each. [Doc. Nos. 83, 116, and 88].[3]

## I.     BACKGROUND

On May 17, 2022, the government filed an Indictment [Doc. No. 1] charging Blaine and James Dyer with offenses arising out of an alleged scheme, lasting from around November or December 2013 until around June 2020, to defraud Continental Resources, Inc. ("Continental") of land and mineral lease acquisitions by using Continental's confidential business information involving future drilling and leasing plans. The government later filed a Superseding Indictment [Doc. No. 84] that added a new count against Blaine Dyer but did not substantively alter the other charges set forth in the Indictment.[4] The Superseding Indictment includes against Blaine and James Dyer

---

[2] Defendant Blaine Dyer also moved [Doc. No. 99] to join in James Dyer's motions [Doc. Nos. 71 and 73]. The government does not oppose Blaine Dyer's joinder to the Motion to Dismiss raising arguments under the Fifth and Sixth Amendments [Doc. No. 71], but it does object to his joinder to James Dyer's Motion to Dismiss based on the statute of limitations [Doc. No. 73]. [Doc. No. 119]. The Court grants the motions for joinder in that it will consider the arguments raised in the instant motions to dismiss as they relate to both Defendants.

[3] Defendants also filed an unauthorized Joint Reply [Doc. No. 122] in support of their motions to dismiss based on the statute of limitations. The Court struck that reply because Defendants did not seek leave to file a reply brief as required by Local Criminal Rule 12.1(c). *See* Enter Order [Doc. No. 125]. The Court ultimately granted leave to file replies by Defendants [Doc. No. 130], but this reply was not refiled. In any event, upon its review of the stricken reply, nothing asserted in it would change the Court's determination that the allegations in the Superseding Indictment satisfy the requirements of the statute of limitations at this stage and that Defendants have not shown that pretrial dismissal of the Superseding Indictment is warranted.

[4] *See* Notice [Doc. No. 89] (confirming no impact on the previously pending motions).

one count for Conspiracy to Commit Honest Services Wire Fraud, in violation of 18 U.S.C. § 1349, and seven counts of Honest Services Wire Fraud, in violation of 18 U.S.C. §§ 1346 and 1343. Blaine Dyer is additionally charged in three counts of making a false statement on a loan application, promissory note, or commercial guaranty, in violation of 18 U.S.C. § 1014.

## II.   DISCUSSION

Defendants both state that the Indictment and Superseding Indictment should be dismissed, but they challenge the timeliness under the applicable statute of limitations of only the conspiracy charge in Count One. The Court will thus limit its review of the Indictment and Superseding Indictment under the applicable statute of limitations to the conspiracy charge.

A statute of limitations for criminal offenses "provides a nonjurisdictional defense" that must be timely raised in the district court. *See Musacchio v. United States*, 577 U.S. 237, 248 (2016) (examining 18 U.S.C. § 3282(a) which provides for a statute of limitations of five years). If untimely, a charge must be dismissed with prejudice to refiling. *See* 18 U.S.C. § 3288; *see also Toussie v. United States*, 397 U.S. 112, 123–24 (1970).

Defendants' Motions are governed by Fed. R. Crim. P. 12(b)(1), which authorizes a pretrial determination of any defense or objection "that the court can determine without a trial on the merits." A pretrial motion may properly be decided under this rule if it does not require the resolution of "any disputed questions of fact about the circumstances of the alleged crime" and "implicates 'facts peculiar to the motion,' and not facts

surrounding the question of guilt or innocence." *United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010) (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)) (cleaned up). A trial court may also properly decide pretrial motions "that require it to answer only pure questions of law;" thus, "a court may always ask 'whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offence.'" *Id.* (quoting *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006)).

"The date of the original indictment tolls the limitations period as to charges alleged." *United States v. Davis*, 953 F.2d 1482, 1491 (10th Cir. 1992) (citing *United States v. Jones*, 816 F.2d 1483, 1487 (10th Cir. 1987)). A superseding indictment "relates back to the original indictment's date if [it] does not broaden or substantially amend the original charges." *United States v. Qayyum*, 451 F.3d 1214, 1218 (10th Cir. 2006) (internal quotations omitted). Defendants do not argue that the Superseding Indictment substantially amends the original charge in Count One. It thus relates back to the date the Indictment was filed: May 17, 2022.

Motions to dismiss raising statute of limitations defenses require courts to "'test the indictment solely on the basis of the allegations made on its face, and such allegations are to be taken as true.'" *United States v. Kemp & Assocs., Inc.*, 907 F.3d 1264, 1270 (10th Cir. 2018) (quoting *Qayyum*, 451 F.3d at 1218). The Court is thus "bound by the language" of the Superseding Indictment in "reviewing the scope of the conspiracy." *Id.*

The parties agree that the five-year statute of limitations in 18 U.S.C. § 3282 applies to the conspiracy charge under § 1349 in Count One. The parties also appear to agree that this conspiracy charge does not require the government to prove an overt act in

furtherance of the conspiracy. *See* [Doc. No. 73] at 3; [Doc. No. 83] at 3; [Doc. No. 95] at 7;[5] *see also United States v. Gonzalez*, 834 F.3d 1206, 1220 (11th Cir. 2016) (explaining that an offense under § 1349, unlike one under § 371, does not require proof of an overt act); *United States v. Njoku*, 737 F.3d 55, 67–68 (5th Cir. 2013) (same).

"[A] conspiracy, once instituted, continues to exist until it is abandoned, succeeds, or is otherwise terminated by some affirmative act, such as withdrawal by the defendant." *United States v. Russell*, 963 F.2d 1320, 1322 (10th Cir. 1992). "[F]or conspiracy statutes that do not require proof of an overt act, the indictment satisfies the requirements of the statute of limitations if the conspiracy is alleged to have continued into the limitations period." *United States v. Fishman*, 645 F.3d 1175, 1191 (10th Cir. 2011) (internal quotations omitted). The Superseding Indictment specifically states with respect to Count One, "From in or about December 2013 through in or about June 2020, Blaine Dyer and James ("Jimmy") Dyer knowingly and intentionally, and with interdependence, combined, conspired, and agreed with . . . others to commit the offense of honest services wire fraud . . . ." [Doc. No. 84] at ¶ 7.

Taking as true the allegation that the conspiracy continued to June 2020, the Superseding Indictment squarely places the charged conspiracy within the five-year statute of limitations. *See Fishman*, 645 F.3d at 1192; *see also United States v. McNaul*, No. 6:12-CR-10210-JTM, 2015 WL 3670492, at *3 (D. Kan. June 12, 2015) (holding that "the government's mere allegation" that a conspiracy existed within the five-year

---

[5] The Court cites to CM/ECF page numbering across the top of filings.

period before the indictment was sufficient to deny a pretrial motion to dismiss raising the statute of limitations). On that basis alone, the Superseding Indictment satisfies the requirements of the statute of limitations and should not be dismissed.

*Fishman* also noted that, although the government need not prove an overt act as an element of the conspiracy offense, proof of overt acts can be helpful for, "among other things: (1) showing that a conspiracy begun more than five years before the return of an indictment continued into a period within the statute of limitations; [or] (2) showing that a particular defendant knowingly joined (or remained a member of) a conspiracy." 645 F.3d at 1191 (quoting *United States v. Green*, 599 F.3d 360, 372 (4th Cir. 2010)). So while the government need not list any overt act in the indictment to state a conspiracy offense under § 1349, *id.* at 1195–96, it has listed several overt acts that are useful to show that the alleged conspiracy continued into the limitations period.

The Indictment was filed on May 17, 2022. Therefore, acts occurring within five years before that date—in other words, those occurring on or after May 17, 2017—would be helpful in showing that the charged conspiracy continued into the limitations period.

The latest-occurring act of the coconspirators alleged in the Superseding Indictment is receipt of payments by Enercore Resources LLC ("Enercore")—an entity the government alleges the coconspirators formed to facilitate the purchases and sales of mineral interests—from Continental through June 2020 pursuant to an overriding royalty interest ("ORRI") reserved by Enercore in the assignments of mineral rights to Continental. [Doc. No. 84] at ¶¶ 9(F), 10(MM), 17. Defendants contend that receipt of these ORRI payments should not be considered acts in furtherance or objects of the

conspiracy because the central purpose of the conspiracy was not enrichment but merely to obtain Continental's confidential drilling and leasing plans. The Superseding Indictment alleges, however, that "[t]he object of the conspiracy was to enrich [Defendants] and others through the unlawful use and exploitation of Continental's confidential drilling and leasing plans that Biggs provided by virtue of his employment with Continental." *Id.* at ¶ 8. The Court is bound by this allegation. *Kemp*, 907 F.3d at 1270. Testing the allegations of the ORRI payments on their face, the Court is unable to determine that the receipt of the payments was not acts in furtherance of the conspiracy where the alleged object is enrichment. Receipt of these ORRI payments could thus show that the conspiracy continued into the limitations period. *Cf. United States v. Evans & Assocs. Constr. Co.*, 839 F.2d 656, 661 (10th Cir. 1988) (analyzing § 3282's five-year statute of limitations in the context of a criminal conspiracy to violate the Sherman Antitrust Act and concluding that any money issued to any coconspirator was sufficient to delay the start of the statute even where it appeared there had been "no division of these payments among conspirators").[6]

James Dyer asserts a separate argument based on his alleged withdrawal from the conspiracy outside of the limitations period. Generally, withdrawal is not a defense available to defendants charged with a conspiracy not requiring an overt act. *Fishman*, 645 F.3d at 1196. But a defendant's withdrawal from even a non-overt act conspiracy

---

[6] The government also raises Blaine Dyer's movement of funds on October 25, 2018, *see* [Doc. No. 84] at ¶ 10(LL), which the Court does not reach under its analysis to deny these pretrial motions but notes the government's argument as preserved for any appeal. *See* [Doc. No. 116] at 2 and 4 n.3.

7

will start the running of the statute of limitations as to that defendant. *Id.* (citing *United States v. Williams*, 374 F.3d 941, 950 n.11 (10th Cir. 2004)). So if James Dyer could establish his withdrawal from the conspiracy outside of the five-year limitations period, the conspiracy charge against him would be untimely.

To withdraw from a conspiracy, "a defendant must disclose the scheme to law enforcement authorities or make a reasonable effort to communicate his withdrawal to his coconspirators." *United States v. Randall*, 661 F.3d 1291, 1294 (10th Cir. 2011). If withdrawal is premised on communication to coconspirators, the defendant must show his communication was "more than implied dissociation. It must be sufficiently clear and delivered to those with authority in the conspiracy such that a jury could conclude that it was reasonably calculated to make the dissociation known to the organization." *Id.* at 1295. "'Mere cessation of one's participation in a conspiracy is insufficient to demonstrate withdrawal.'" *Id.* at 1294 (quoting *United States v. Hughes*, 191 F.3d 1317, 1321 (10th Cir. 1999)). Nor can a defendant "[s]imply not spend[] time with coconspirators . . . to satisfy this [withdrawal] standard." *Id.* at 1295.

James Dyer generally describes measures he took to withdraw from the charged conspiracy. At this stage, it would be inappropriate for the Court to resolve any fact issue regarding his alleged withdrawal. *See United States v. Thornburgh*, 645 F.3d 1197, 1204–07 (10th Cir. 2011). The Court thus declines to dismiss the conspiracy charge against James Dyer because of withdrawal from the charged conspiracy.

Finally, Defendants assert that their Fifth Amendment Due Process and Sixth Amendment speedy trial rights have been violated due to the government's preindictment

delay. Defendants perfunctorily raise a claim that the preindictment delay violated their right to a speedy trial. The Sixth Amendment right to speedy trial "'attaches when the defendant is arrested or indicted, whichever comes first.'" *United States v. Larson*, 627 F.3d 1198, 1207 (10th Cir. 2010) (quoting *United States v. Seltzer*, 595 F.3d 1170, 1176 (10th Cir. 2010)). Here, Defendants' Sixth Amendment speedy trial rights attached when they were indicted on May 17, 2022. Thus, any preindictment delay did not violate their speedy trial rights. *United States v. Madden*, 682 F.3d 920, 930 (10th Cir. 2012). Defendants' claims based on preindictment delay are better analyzed under the Fifth Amendment Due Process Clause. *See United States v. Johnson*, 120 F.3d 1107, 1110 (10th Cir. 1997).

"Preindictment delay is not a violation of the Due Process Clause unless the defendant shows both that the delay caused actual prejudice and that the government delayed purposefully in order to gain a tactical advantage." *Id*. "Vague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient to constitute a showing of actual prejudice. Defendant[s] must show definite and not speculative prejudice, and in what specific manner missing witnesses would have aided the defense." *United States v. Trammell*, 133 F.3d 1343, 1351 (10th Cir. 1998).

Defendants have not shown actual prejudice. They assert that the government's delay deprives them of the benefit of evidence from lost emails, text messages, and handwritten notes that "would certainly be exculpatory." [Doc. No. 71] at 8. They also contend that they are prejudiced by the impact of time on the memories of those involved

9

in the charged conspiracy, including their own. These assertions fail to show actual prejudice and instead show only speculative prejudice. *See United States v. Koch*, 444 F. App'x 293, 298 (10th Cir. 2011) (unpublished) ("[A]lthough [the defendant] argues he was deprived the benefit of evidence from lost records and faded memories, he provides nothing more than speculation that any of those records or memories would have proven exculpatory rather than inculpatory."). The suggestion that Defendants' ability to cross-examine witnesses called by the government has been hindered by the delay is likewise too speculative to show actual prejudice.

Defendants also have not shown the government intentionally delayed to gain a tactical advantage over them. They assert that the government strategically delayed in indicting them so that it could build its case against them by first charging alleged coconspirators. Defendants complain about the two-and-a-half-year gap between the indictment of one of their alleged coconspirators and the Indictment in this case. The kind of delay Defendants complain of here—delay caused by completion of government investigation—is not the kind of purposeful and intentional delay that would support dismissal for preindictment delay. *See United States v. Lovasco*, 431 U.S. 783, 795–96 (1977) ("[T]o prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time.").

### III. CONCLUSION

For these reasons, and based on the parties' submissions and relevant law, Defendant James Dyer's Motion to Dismiss Indictment for Expiration of the Statute of

Limitations After Withdrawal from the Conspiracy [Doc. No. 73], Defendant Blaine Dyer's Motion to Dismiss for Expiration of the Statute of Limitations and Due Process [Doc. No. 95], and James Dyer's Motion to Dismiss Indictment for Due Process and Speedy Trial Violation for Pre-Accusation Delay [Doc. No. 71] are DENIED.

IT IS SO ORDERED this 12th day of February 2023.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE